## STEVENSON v. GREENLEE.

1. EVIDENCE AND INSTRUCTIONS: RECORD. The Supreme Court will review the ruling of the Court below, in giving or refusing to give instructions, where the record does not present all the evidence, if it embraces sufficient to show the applicability of such instructions.

2. SAME: INSTRUCTIONS MANIFESTLY WRONG. If prejudice has resulted from instructions given to the jury, which, under no supposable state of case, would be good law, it is unnecessary to set out the evidence.

3. APPLICABILITY OF INSTRUCTIONS. When the pleadings and evidence showed that a debtor transferring to a third party certain goods and accounts in consideration of his assuming his liability to the creditor, and that such third party was induced, by the false and fraudulent representations of the creditor, to take the goods and accounts, and execute his promissory note to such creditor for the amount of the debt thus assumed, but it did not appear whether the goods were absolutely sold, or taken as collateral security only, it was held, that the Court erred in instructing the jury to find for the defendant, if the difference in value between the goods and accounts, as represented, and their real value was, in fact, equal to the balance due on the note.

*Appeal from Cedar District Court.*

### FRIDAY, JUNE 12.

PLAINTIFF sued upon a promissory note, and defendant answered, that it was obtained by fraud and false representations; that there had been an entire failure of consideration; that there had been a partial failure; that the note was obtained without consideration; and he asks to set off, after (deducting certain payments) the difference between the actual value of the goods, notes, accounts, &c., forming the basis of the consideration and their value, as represented, verdict and judgment for defendant; and plaintiff appeals, assigning as error the action of the Court in giving and refusing certain instructions, and in overruling the motion for new trial.

*Cook & Drury* for the appellants.

*Fairall & Boal* for the appellee.

Stevenson v. Greenlee.

As to whether there was error in the ruling of the Court below, this tribunal, following its oft-repeated and well-settled rule, will find it difficult to determine, as the bill of exceptions shows that only a part of the evidence is embodied in the record. *Stockton* v. *The City of Burlington*, 4 G. Greene, 84; *Brobst* v. *Thompson*, Id., 135; *Curts* v. *Scoles & Turner*, 1 Iowa, 471; *Porter* v. *Walker*, 1 Id., 457; *Beebe* v. *Stutsman et al.*, 5 Id., 271; *Brady* v. *Malone*, 4 Id., 146; *Conger* v. *Dean*, 3 Id., 463; *Davis* v. *Moffit*, 4 G. Greene, 92; *McKinney* v. *Hartman*, 3 Iowa, 344.

The Court instructed the jury correctly as to the measure of damages, following the rule established in *Likes* v. *Baer*, 8 Iowa, 370.

WRIGHT, J.—It is not true, that as an invariable rule, that all of the testimony should be embodied in the record in order to show the pertinency or applicability of instructions asked and refused. So much should be set out certainly as has relation to the instructions asked, that their applicability may appropriately appear; for if their pertinency does not appear from the record, we are bound to presume that they were refused for that reason, it being always proper to refuse an instruction, ever so correct abstractly, which is not suitable to the case made by the record. It does not follow, however, as assumed by appellee, that because only a part of the evidence is embodied in the record, we cannot examine the action of the Court in refusing to give the instructions asked by plaintiff. And these remarks are of more force when applied to the instructions in chief, or those given by the Court, at its own instance. If prejudice has resulted from an instruction given, which, under no supposable state of case, would be good law, there is no necessity for setting out the testimony, to show its inapplicability and erroneousness.

If under a possible state of facts, it would be the law,

the party complaining that it was erroneous, and misled the jury, because of its inapplicability, must show this to be true, by embodying the testimony, or so much thereof, as is relevant to such instruction.

From the answer and.instructions, and so much of the testimony as is contained in the record, it seems that Inslee & Co. had a debt against Williamson & Beal; that these debtors had certain goods and accounts, and that in consideration of the transfer of these goods, &c., to him, defendant, at the request of Inslee & Co., and, as he alleges, as the result of these false and fraudulent representations, made to them the note in controversy, which they indorsed to plaintiff after maturity. Whether these goods and accounts were absolutely sold, or mortgaged only to defendant, whether he took the entire title, or as collateral security, merely to protect him for assuming the debt of Williamson & Beal, is left in complete uncertainty, as well by the answer as by the instructions. The instructions, assuming that this would make no difference, directed the jury to find for the defendant generally, if this difference in the value between the goods and books (of account), as represented, and their real value was, in fact, equal to the balance due on the note. As applied to this case, this was erroneous.

It is not denied by appellant, that if there was a sale by plaintiff, (or his assignee) to defendant, and there was either fraud or breach of contract, defendant could recover the difference in value between the goods delivered and those corresponding with the representations made. But this rule is not applicable, if the defendant took the goods to secure himself, for he should then be held to account on the note for whatever they were really worth. Thus, to illustrate, in the case of the sale, defendant would be entitled to the full benefit of his contract, upon the supposition that the goods were of the represented quality. If he

took them as collateral, or for his security, then, if by the fraud and false representations of plaintiff he was induced to enter into the contract, he might rescind it, or avoid the note *pro tanto*, by showing the actual value of the goods, and to the extent that this was less than the amount of the note, he would be entitled to a credit. But suppose the goods were worth $700, that the note was $1,200 (upon which was paid $500), and by fraud, &c., he relied upon their being worth $1,400, then, under the instructions of the Court, plaintiff could not recover anything though defendant had received the whole $700 on the actual value of the goods. The error of this view consists in allowing defendant the benefit of a transaction, and to make profit by way of damages, in a case where he received the property, not by way of absolute purchase, but as security. So far as it was security, upon the hypothesis that the requisite fraud, &c., was established, he should be made liable, and should not be allowed to keep in his hands a portion of the trust fund, because he could have made more than the amount of his note to plaintiff, if he had got what was reported.

This view disposes of the case, and renders an examination of some minor points, raised and discussed by appellant's counsel, unnecessary.

Reversed.